***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gregory, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employer-employee relationship existed between defendant and plaintiff on March 14, 2000.
4. Louisiana Pacific Corporation is a duly qualified self-insured employer, with Sedgwick Claims Management Services, Inc., acting as its servicing agent.
5. Plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee, dated August 14, 2001.
6. Defendant filed a Form 61, Denial of Workers' Compensation Claim, dated October 29, 2001.
7. Plaintiff filed a Form 33, Request That Claim be Assigned for Hearing before the Deputy Commissioner, dated November 2, 2001.
8. Defendant filed a Form 33R, Response to Request that Claim be Assigned for Hearing before the Deputy Commissioner, dated December 12, 2001.
9. A mediated settlement conference was held on August 29, 2002.
10. Exhibits 1, 2, and 3 were stipulated into evidence.
 ***********
Based upon all of the competent, credible evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, born on July 4, 1935, began work with defendant on April 3, 1972, as a utility person at Louisiana Pacific's Roaring River facility. Plaintiff thereafter worked in maintenance, including grinding knives that were used in the manufacture of siding.
2. Plaintiff suffers from a number of chronic health problems. Plaintiff has suffered from high blood pressure since approximately 1980. Additionally, in the 1980s and early 1990s, plaintiff suffered from heart-related problems that required he undergo an angioplasty procedure.
3. Dr. Jerry Pinkerton, plaintiff's primary care physician, diagnosed plaintiff with diabetes in 1996. Since that time, plaintiff's diabetic condition has been poorly controlled.
4. Plaintiff has a history of back problems. He first experienced back problems in February 1961, when he sustained a herniated disc as a result of a work-related injury. Plaintiff's back problems required disc surgery.
5. On April 8, 1997, plaintiff saw Dr. Pinkerton, and complained of a great deal of pain in his lower back. Dr. Pinkerton noted that plaintiff had marked spasm and tight cords in the lumbar region of his back. Dr. Pinkerton concluded that plaintiff suffered from a back strain and prescribed Oruvail and Norflex.
6. Plaintiff's back pain had not resolved when he next saw Dr. Pinkerton on May 7, 1997. Thereafter, on August 25, 1997, Dr. Pinkerton diagnosed plaintiff as suffering from degenerative joint disease affecting the spine. Degenerative joint disease tends to progress and may worsen in the absence of any specific event.
7. Plaintiff retired from his employment with defendant on March 1, 1999, believing he had been born in 1934 and, therefore, would be entitled to full Social Security and Medicare benefits in 1999. Plaintiff's belief in this respect was erroneous, as plaintiff actually was born in 1935.
8. After plaintiff realized he was not able to receive Medicare benefits and had no other health insurance coverage, he asked that he be re-employed by Louisiana Pacific. Plaintiff was allowed to return to work for Louisiana Pacific on a part-time basis on December 31, 1999.
9. On January 24, 2000, plaintiff saw Dr. Pinkerton, and complained again of back pain. Dr. Pinkerton assessed plaintiff's condition as osteoarthritis of the spine.
10. On March 3, 2000, plaintiff saw Dr. Pinkerton, this time complaining of "still severe back pain without history of trauma." Dr. Pinkerton noted that plaintiff exhibited "[a]lmost amazing bilateral lumbar back spasm and tightness." Dr. Pinkerton treated plaintiff with Robaxin and Arthrotec and noted that plaintiff would be re-examined in two to three weeks, at which time Dr. Pinkerton would obtain an x-ray or MRI scan if plaintiff's condition had not improved.
11. On March 14, 2000, plaintiff was performing his part-time maintenance duties at defendant's facility. Specifically, plaintiff was filling five-gallon gasoline containers that were used to supply fuel to welding machines and transporting them to defendant's maintenance shop. Plaintiff filled the containers with gasoline, placed them on the back of a golf cart, and drove them to the maintenance shop. After arriving at the shop and unloading the containers of gasoline, plaintiff fell while he attempted to secure the tailgate on the back of the golf cart. In doing so, plaintiff bumped the back of his head on the floor of defendant's maintenance shop. Plaintiff was wearing a hard hat at the time of his fall.
12. David Bowers, the supervisor on duty on March 14, 2000, and other employees helped plaintiff to get up. Bowers then escorted plaintiff to an office, where plaintiff told Bowers that he had sustained a slight bump on the back of his head. Otherwise, he reported no injury. Bowers transcribed plaintiff's comments concerning his fall onto a "Supervisors Injury Report" in accordance with defendant's policy. In completing this form, Mr. Bowers specifically asked plaintiff whether he needed medical attention. Plaintiff replied that he did not, and Bowers recorded the same on the form.
13. Bowers asked plaintiff several more times on March 14, 2000, whether plaintiff was physically well. Plaintiff assured Bowers each time that he was fine, but that his head was hurting. Plaintiff never complained about any injury to his back. Plaintiff returned to work and completed his shift on March 14, 2000.
14. From March 14, 2000, the date of plaintiff's fall, to October 6, 2000, the last date of his employment with defendant, plaintiff worked on a regular basis, and never mentioned to defendant any problems related to his fall. Plaintiff never complained to defendant of any back problems. Steve Barber, plaintiff's regular supervisor, inquired on four separate occasions, from March 15 to 24, 2000, whether plaintiff was well. Each time plaintiff responded that he was. Further, plaintiff continued to work on a regular basis and never missed any work between March 14 and October 6, 2000, when he was laid off with other employees in a reduction in force.
15. On March 17, 2000, three days after his fall, plaintiff saw Dr. Pinkerton for a follow-up visit. Plaintiff asked Dr. Pinkerton to assess a spot or cyst on his back that had been there for approximately six months, a wart over his eye, and skin tags on his ears. Plaintiff did not tell Dr. Pinkerton about his fall, and he did not make any complaints about his back.
16. Plaintiff testified, and the Full Commission hereby finds as fact, that he did not experience any back pain until approximately two months after his fall.
17. On May 26, 2000, more than two months after his fall, plaintiff reported to Terry Sheets, a family nurse practitioner in Dr. Pinkerton's office, that he had experienced back pain for two weeks. Plaintiff reported that he had fallen in February 2000 and that he could not bend over or tie his shoes. Nurse Sheets recommended an MRI scan, which plaintiff failed to undergo due to claustrophobia.
18. Plaintiff subsequently saw Dr. Pinkerton on June 23, 2000. Dr. Pinkerton noted that plaintiff had some back pain, but that it seemed to be improving. Dr. Pinkerton could not determine whether plaintiff suffered from benign prostatic hypertrophy, or whether he suffered from radiculopathy.
19. Plaintiff made no complaints of back pain to Dr. Pinkerton during visits on July 24 and 27, 2000, as well as on August 11, 2000. On September 29, 2000, Dr. Pinkerton concluded that plaintiff was suffering from benign prostatic hypertrophy.
20. Plaintiff was laid off on October 6, 2000, as part of a reduction in force. On December 4, 2000, Dr. Pinkerton noted that plaintiff's history of back strain had stabilized and that plaintiff was doing relatively well. Thereafter, on January 29, 2001, plaintiff saw Dr. Pinkerton and complained of back pain. Dr. Pinkerton attributed plaintiff's back pain to degenerative joint disease of the spine and provided plaintiff with samples of Vioxx.
21. On July 5, 2001, more than fifteen months after plaintiff's fall and nine months after being laid off from his part-time position with defendant, plaintiff contacted defendant and informed defendant for the first time of his back problems and his belief that they were the result of his fall on March 14, 2000.
22. On August 9, 2001, plaintiff saw Dr. Pinkerton and complained of back pain that was worse than normal. Dr. Pinkerton attributed plaintiff's condition to severe osteoarthritis. At plaintiff's request, Dr. Pinkerton referred him to Dr. Richard Adams, an orthopedic surgeon in Statesville.
23. On August 15, 2001, Dr. Adams examined plaintiff and reviewed an x-ray of plaintiff's back, which revealed degenerative changes at L4-5 and L5-S1. Dr. Adams did not review any of Dr. Pinkerton's records, and he had no knowledge of the condition of plaintiff's back prior to August 15, 2001. Based solely on inaccurate information conveyed to him by plaintiff, Dr. Adams' initial impression was that plaintiff had suffered an acute lumbosacral strain superimposed upon pre-existing degenerative changes in plaintiff's lumbosacral spine that activated his condition and produced chronic pain in plaintiff's back and legs. However, Dr. Adams' initial opinion was based on assumptions that are not supported by competent evidence in the record. Specifically, Dr. Adams assumed that plaintiff's preexisting degenerative spinal conditions were asymptomatic prior to his fall on March 14, 2000. Dr. Adams also assumed that plaintiff's back pain began shortly after his fall on March 14, 2000, and worsened thereafter. This assumption, and the history given by plaintiff to Dr. Adams, was inconsistent with plaintiff's own testimony at the hearing before the Deputy Commissioner that his back pain did not begin until approximately two months after his fall. For these reasons, Dr. Adams' initial opinions regarding causation are given little weight.
24. Based on plaintiff's complete medical history and an accurate explanation as to when plaintiff first began to experience back pain following the fall, Dr. Adams concluded, and the Full Commission finds as fact, that it was not probable or likely that plaintiff's fall on March 14, 2000, caused his subsequent back problems or that the fall aggravated or activated plaintiff's preexisting degenerative back conditions.
25. Dr. Pinkerton initially opined that plaintiff's fall could have caused plaintiff's subsequent back pain. This opinion, however, is entitled to little weight because it was based on the incorrect assumption that plaintiff experienced back pain from the time of his fall until his office visit on May 26, 2000. When supplied with an accurate history, specifically that plaintiff's back pain did not begin until approximately two months after his fall, Dr. Pinkerton opined, and the Full Commission finds as fact, that it was not probable or likely that plaintiff's back complaints were related to the fall.
26. Dr. O. Del Curling, a neurosurgeon who evaluated plaintiff at defendant's request on October 10, 2002, also concluded that plaintiff's back problems are most likely related to degenerative changes in his lumbar spine. Dr. Curling opined that there is no causal relationship between plaintiff's fall and his back complaints, and that the fall did not result in any aggravation or exacerbation of plaintiff's pre-existing degenerative back conditions.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an accident arising out of and in the course of his employment when he fell on March 14, 2000. Plaintiff did not, however, sustain any injury to his back as a result of that accident. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's back conditions and complaints from May 2000 to the present are due to his preexisting degenerative spinal conditions, which were not caused, activated, aggravated, or accelerated by his fall at work on March 14, 2000.
3. Plaintiff suffered no disability as a proximate result of his fall at work on March 14, 2000. Therefore, plaintiff is not entitled to any compensation for disability. N.C. Gen. Stat. §§ 97-29, 97-30, and 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and the same hereby is, DENIED.
2. Each party shall bear its own costs, except that defendant shall pay all expert witness fees as previously ordered if not already paid.
This 20th day of May 2004
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER